RONALDO A. COULTER
Idaho Employment Law Solutions
Attorney at Law
776 E. Riverside Drive, Suite 206
P.O. Box 1833
Eagle, Idaho 83616
Telephone: (208) 672-6112
Facsimile: (208) 672-6114
Idaho State Bar No.3850
ron@idahoels.com

*Attorney for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **ASHLEY L. BERNARD** | |
| **Plaintiff** | **Case No.** |
| vs. | _____ |
| **PAUL STPHEN WHITE AND MICHAEL J. LING dba BERKELEY, INC.** | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| **Defendants** | |

# COMPLAINT

Plaintiff, ASHLEY L. BERNARD ("Ms. Bernard", "Ashley"), complains of Defendant

BERKELY INC. ("Berkeley" or Employer) as follows:

# I. PARTIES

1. Ms. Bernard is a current employee of the Defendant in this matter. At all times relevant, Ms. Bernard was a resident of Ada County, Idaho.

2. At all relevant times, Defendant Berkeley Inc. was an Idaho corporation whose Organizational ID/Filing Number is C113174 which entity was incorporated on December 28, 1995. The address of Berkeley, Inc. is 3778 Plantation River Dr. Suite 102, Boise, ID 83703. The registered agent for Berkeley Inc. is Mr. Michael J. Ling.

3. Defendants, Mr. Paul Stephen White and Mr. Michael J. Ling, are owners and principals of Berkeley, Inc.

4. Defendants, Mr. Paul Stephen White, Mr. Michael J. Ling, and Berkeley, Inc. are employers within the meaning of 29 U.S.C. § 203(d), Idaho Code § 44-1701(2) and Idaho Code 45-601(5)[1] and are engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1), Fair Labor Standards Act of 1938.

## II. JURISDICTION

5. Pursuant to 29 U.S.C. 206(d), the Equal Pay Act of 1963, 29 U.S.C. §215(a)(3) of the Fair Labor Standards Act, Title 44 Chapter 17 of the Idaho Code and the Idaho Wage Claim Act, I.C.§ 45-615(1), Plaintiff brings this action in, and jurisdiction is proper in, the United

---

[1] 29 U.S.C.A. § 203 (d) reads as follow**:** "Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization;

I.C § 44-1701(2) reads as follows: "Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee.; and

I.C. § 45-601(5) reads as follows: "Employer" means any individual, partnership, association, joint stock company, trust, corporation, the administrator or executor of the estate of a deceased individual, or the receiver, trustee, or successor of any of the same, employing any person.

States District Court for the District of Idaho per 28 U.S.C. §§ 1331, 1391(b)(1) and (b)2), and 28 U.S.C.§ 1367(a).  There is no exhaustion of administrative remedy requirement for bringing an action in federal court under the Equal Pay Act; *Washington Cty. v. Gunther*, 452 U.S. 161, 175, 101 S. Ct. 2242, 2250, 68 L. Ed. 2d 751 (1981) fn. 14 (1981). Additionally, there is no exhaustion of administrative remedy requirement for bringing an action pursuant to Title 44 Chapter 17 of the Idaho Code *et seq.* specifically, I.C. Code § 44-1704(2) as well as I.C. § 45-615 (1).

### III. STATEMENT OF FACTS

#### A. FAILURE OF DEFENDANTS TO COMPLY WITH THE EQUAL PAY ACT AND COMPENSATE FOR OVERTIME HOURS WORKED.

6. At all times relevant to this complaint, Plaintiff was a female employee of Defendants.

7. Ms. Bernard began her employment with Berkeley Inc. on August 6, 2012.

8. That in an effort to advance in position and responsibility with her employer, Ms. Bernard pursued and obtained her Registered Paraplanner certification in June of 2013.

9. That in a further effort to advance in position and responsibility with her employer and with the financial support of her employer, Ms. Bernard pursued and obtained her Masters of Science Degree in Family Financial Planning in 2017.

10. In 2017, Ms. Bernard obtained her license as a Certified Financial Planner (CFP).

11. That in 2004, Berkeley Inc. hired a male employee Mr. J Chris Hendrickson (hereinafter Mr. Hendrickson) who in 2007 became a licensed Certified Financial Planner.

12. That Berkeley Inc. maintains the work and activities by contact of Mr. Hendrickson and Ms. Bernard.

13. That the record shows that from at least 2015 to the present date, Ms. Bernard was at a minimum employed in positions that were the same or substantially similar to that of Mr. Hendrickson and the positions of Mr. Hendrickson and Ms. Bernard required skill, effort and responsibility under similar working conditions.[2]

14. That Berkeley Inc. did not establish and has not established written job descriptions stating the general duties and responsibilities of its employees Mr. Hendrickson and Ms. Bernard, nor delineating the essential functions of each employees' position as it pertains to Mr. Hendrickson and Ms. Bernard.

15. That in addition to being employed in a position that was the same or substantially similar of Mr. Hendrickson which position required the same skill, effort and responsibility under similar working conditions as Mr. Hendrickson, Ms. Bernard had additional responsibilities.

16. That notwithstanding the fact Ms. Bernard was and continues performing in the same capacity as Mr. Hendrickson and being responsible for additional duties, Defendant

---

[2] The Federal Rule of Civil Procedure (F.R.C.P.) 8(a) requires a short and plain statement of the claim showing that the pleader is entitled to relief and a demand for the relief sought, which may include relief in the alternative or different types of relief. In interpreting the language of F.R.C.P. 8(a), the Supreme Court established the plausibility pleading standard. The plausibility pleading standard does not require "detailed factual allegations," but it does require more than just "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to sufficiently state a claim to defeat an F.R.C.P. 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009); *Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007); *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986). A claim must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Atlantic Corp v. Twombly,* 550 U.S. at 570, 127 S. Ct. 1955. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556, 127 S. Ct. 1955. The detailed activity record for Mr. Hendrickson and Ms. Bernard are 733 and 2110 pages respectively and establish the plausibility standard required. To include these documents as exhibits to the complaint would be problematic as the Defendant's would not be able to provide an adequate Answer to the Complaint.

Berkeley Inc., paid Ms. Bernard less than it paid Mr. Hendrickson from at least 2015 to the present date.

17. That on or about March 8, 2016 in a discussion between Mr. Paul Stephen White and Mr. Michael J. Ling, Mr. Paul Stephen White stated that it was not his intention to increase the compensation of Ms. Bernard to the equivalent of Mr. Hendrickson.

18. That during the month of February 2017, Mr. Michael J. Ling apologized to Ms. Bernard for Mr. Paul Stephen White's reluctance to fairly compensate Ms. Bernard equal to that of Mr. Hendrickson given the value she adds to Berkeley Inc., its processes, its clients, and ultimately the Firm's (Berkeley Inc.) revenue.

19. On June 3, 2017, Mr. Michael J. Ling indicated he did not realize his Firm had effectively decreased Ms. Bernard's wages in 2017 by changing the payout structure for Firm profitability. Mr. Michael J. Ling indicated he would discuss this decrease with Mr. Paul Stephen White and they would resolve the difference. Mr. Michael J. Ling also indicated he would be notifying Mr. Paul Stephen White of his intention to increase Ms. Bernard's wages by $2.00 per hour for obtaining her Masters of Science degree in Family Financial Planning as another attempt to get her pay closer to equal to Mr. Hendrickson's to reflect at a minimum the equality in their work not to mention his personal belief Ms. Bernard does far more to promote the Firm's growth, has significantly more responsibility, and work load and was worth far more than what she was presently compensated.

20. At the time of the filing of the present complaint, notwithstanding an owner of Berkeley Inc. commenting on Ms. Bernard's value to the Defendant, Ms. Bernard's compensation is still not equal to that of Mr. Hendrickson.

21.     That Berkeley Inc. has no established policies in regard to compensation and or compensation structure. There is a total absence of a seniority system that addresses Berkeley Inc.'s and employee's compensation.

22.     That Berkeley Inc. has no established policy reflecting that compensation is based on the experience of the employee.

23.     That Berkeley Inc. has no established policy that an employee's compensation is based on training, ability, shift differential, or the quality and quantity of earnings produced by an employee.

24.     Given the acknowledged value that Ms. Bernard has brought to the Berkeley Inc. and her lack of equitable compensation, Ms. Bernard's compensation cannot be said to be based on merit.  Additionally, Berkeley Inc. has no established policy that in any way states that an employee's compensation is merit based.

25.     That Ms. Bernard typically works two (2) to four (4) hours of overtime per week and did and has done so in 2016 and 2017.

26.     That on or about September 25, 2017 in a conversation with Ms. Bernard, Mr. Michael J. Ling reminded Ms. Bernard that he thought of her as Berkeley Inc.'s "succession plan".

27.     During this same conversation of September 25, 2017, Mr. Michael J. Ling informed Ms. Bernard that although he approved the time off she requested as he knew that Ms. Bernard worked from home. However, Mr. Michael J. Ling specifically stated that "they" (i.e. Berkeley Inc.)  do not (i.e. will not) and have not ever compensated Ms. Bernard for the many hours of overtime compensation that she was likely due.

28. That on or about September 26, 2017, Mr. Michael J. Ling and Mr. Paul Stephen White discussed the lack of policies regarding compensation and the fact that they may be in violation of laws governing compensating employees for overtime worked.

29. That on or about October 23, 2017 Ms. Bernard, through counsel, sent correspondence to Mr. Paul Stephen White and Mr. Michael J. Ling, demanding that she be compensated for past due wages.

30. That on or about October 24, 2017, Mr. Paul Stephen White and Mr. Michael J. Ling received correspondence wherein, Ms. Bernard, through counsel demanded that she be compensated for past wages due.

31. That at the time of the filing of this complaint, Ms. Bernard has not received the compensation demanded from the Defendants which amount has increased since the demand for payment was made.

### B. DEFENDANTS RETALIATE AGAINST MS. BERNARD

32. That on or about October 24, 2017, Mr. Paul Stephen White and Mr. Michael J. Ling received correspondence wherein, Ms. Bernard, through counsel objected to her not being paid equal to Mr. Hendrickson in violation of the Equal Pay Act, 29 U.S.C. § 206(d), the Fair Labor Standards Act, 29 U.S.C. § 207(a)(1), the Idaho Equal Pay Act, I.C. § 44-1702(1).

33. That the correspondence received by Mr. Paul Stephen White and Mr. Michael J. Ling on October 24, 2017 advised Mr. Paul Stephen White and Mr. Michael J. Ling to not engage in any adverse employment action against Ms. Bernard as a result of Ms. Bernard's demand to be compensated per the applicable laws.

34. That Ms. Megan Gibson is a registered paraplanner who works for Berkeley Inc.

35. That Ms. Megan Gibson regularly reported variations to her schedule two Ms. Bernard.

36. On October 25, 2017, At the direction of Mr. Paul Stephen White, Ms. Gibson was to report variations of her schedule to Mr. Stephen White and/or Mr. Michael J Ling rather that Ms. Bernard, thus relieving Ms. Bernard of her previous supervisory duties in relation to Ms. Gibson.

37. Prior to October 24, 2017, Mr. Paul Stephen White would include Ms. Bernard and Mr. J. Chris Hendrickson on correspondence involving the joint clients of Ms. Bernard and Mr. J. Chris Hendrickson.

38. As of October 31, 2017, Mr. Paul Stephen White no longer includes Ms. Bernard in correspondence involving the joint clients of Ms. Bernard and Mr. J. Chris Hendrickson.

39. By not being included in correspondence involving the joint clients of Ms. Bernard and Mr. J. Chris Hendrickson, Ms. Bernard was relieved of her responsibility of tracking and maintaining adequate client activity logs.

40. By not being included in correspondence involving the joint clients of Ms. Bernard and Mr. J. Chris Hendrickson, Ms. Bernard was relieved of her previous responsibility of directly providing services to Berkeley Inc. clients as she had done prior to October 24, 2017.

41. Prior to October 24, 2017, Mr. Michael J. Ling would notify and provide Ms. Bernard all updates that pertained to the joint clients of Ms. Bernard and Mr. Michael J. Ling.

42. As of November 2, 2017, Mr. Michael J. Ling is no longer notifies and provides Ms. Bernard with pertinent updates pertaining to the joint clients of Ms. Bernard and Mr. Michael J Ling.

43. Through Mr. Michael J. Ling's no longer notifying and providing pertinent information to Ms. Bernard, Ms. Bernard was relieved of her previous responsibility of tracking and maintaining adequate client activity logs.

44. Through Mr. Michael J. Ling's no longer notifying and providing pertinent information to Ms. Bernard, Ms. Bernard was relieved of her previous responsibility of directly providing adequate service to Berkeley clients as she had done prior to October 24, 2017.

45. Prior to October 24, 2017, Mr. Paul Stephen White would provide Ms. Bernard feedback as requested by Ms. Bernard for Ms. Bernard to further discuss directly with the joint clients of Ms. Bernard, Mr. J Chris Hendrickson, Mr. Michael J Ling, and Mr. Paul Stephen White.

46. As of November 20, 2017, Mr. Paul Stephen White is now providing Ms. Bernard the feedback Ms. Bernard has requested but notifying Ms. Bernard that he has already communicated to the joint clients of Ms. Bernard, Mr. J Chris Hendrickson, Mr. Michael J Ling, and Mr. Paul Stephen White and there is no need for Ms. Bernard to communicate to these clients of Berkeley Inc.

47. Through Mr. Paul Stephen White's actions, he has reduced the number of client relationships that Ms. Bernard is responsible for individually and or jointly with Mr. Michael J. Ling, Mr. J. Chris Hendrickson, and Mr. Paul Stephen White.

48. Through Mr. Paul Stephens actions described in paragraph 46 herein, Ms. Bernard was relieved of her previous responsibility of directly providing adequate service to Berkeley clients as she had done prior to October 24, 2017.

49. Prior to October 24, 2017, Mr. Michael J Ling and/or Mr. Paul Stephen White and Ms. Bernard would meet with all prospective clients potentially requiring financial planning

services. Mr. Michael J Ling and/or Mr. Paul Stephen White and Ms. Bernard would share joint responsibility for all new clients seeking services of Berkeley, Inc.

50. On or about November 21, 2017, Mr. Michael J Ling and Mr. Paul Stephen White instructed Ms. Bernard she would not need to participate in a specific client meeting. However, Mr. Michael J Ling and Mr. Paul Stephen White instructed Ms. Gibson she would be responsible for all activities related to this client relationship.

51. Mr. Michael J Ling has assumed all responsibility for financial planning services for this specific client as well as others Ms. Bernard would have had responsibility for prior to October 24, 2017.

52. Through Mr. Michael J. Ling's and Mr. Paul Stephen White's action Ms. Bernard was relieved of her previous responsibility of tracking and maintaining adequate client activity logs and providing financial planning services to Berkeley Inc. clients.

53. Prior to October 24, 2017, in a conversation with Ms. Bernard, which occurred on or about September 25, 2017, Mr. Michael J. Ling reminded Ms. Bernard that he thought of her as Berkeley Inc.'s "succession plan".

54. That in referring to Ms. Bernard as Berkeley Inc.'s succession plan that Mr. Michael J. Ling saw Berkeley Inc.'s continuation as a business entity at a future date through Ms. Bernard.

55. Prior to October 24, 2017, Mr. Michael J. Ling in keeping with having Ms. Bernard be Berkeley Inc.'s succession plan included in and or provided Ms. Bernard with regular updates in regard to all activities pertaining to Berkeley Inc. and her role as the successor.

56. That on or about November 22, 2017, Mr. Michael J. Ling no longer treated Ms. Bernard as someone who would serve as successor to the owners of Berkeley Inc.

57. That on or about November 22, 2017, Mr. Michael J. Ling began restricting the number of client meetings that Ms. Bernard would attend.

58. That on or about November 22, 2017, Mr. Michael J. Ling began to exclude Ms. Bernard from meetings with and receiving correspondence from potential vendors and or service providers

59. That on or about November 22, 2017, Mr. Michael J. Ling, no longer consulted with Ms. Bernard about decisions that would affect Berkeley Inc. at present and in the future.

60. That on or about November 22, 2017, Mr. Michael J. Ling, no longer included Ms. Bernard in Mr. Michael J. Ling's review of key compliance document that directly affected Berkeley Inc.

61. Through Michael J. Ling's no longer considering Ms. Bernard as the successor to the owners of Berkeley Inc. Ms. Bernard was relieved of her previous responsibility of taking action to ensure the viability of Berkeley Inc. in real time and in the future.

62. Through Michael J. Ling's no longer considering Ms. Bernard as the successor to the owners of Berkeley Inc. Ms. Bernard's future earning capacity with Berkeley Inc. was significantly reduced.

63. Prior to October 24, 2017, Mr. J Chris Hendrickson and Ms. Bernard would meet with all prospective internet leads jointly. Mr. J Chris Hendrickson and Ms. Bernard would share joint responsibility for all clients obtained via the internet.

64. That on or about November 27, 2017, Mr. Michael J. Ling removed Ms. Bernard of her responsibility of meeting internet leads with Mr. J. Chris Hendrickson. Mr. Michael J. Ling gave specific instructions to Mr. J. Chris Hendrickson that Ms. Bernard was not to participate in a specific internet lead client meeting. Mr. Michael J Ling further instructed Ms.

Bernard she would later be notified by Mr. Michael J Ling or Mr. J Chris Hendrickson if her participation in subsequent interactions with internet leads would be needed and would be requested on a case by case basis

65. That the action of by Mr. Michael J. Ling relieving Ms. Bernard of her responsibility of jointly meeting with internet clients from beginning to end prevented Ms. Bernard from establishing new client relationships.

66. That the action of by Mr. Michael J. Ling of relieving Ms. Bernard of her responsibility of jointly meeting with internet clients prevented Ms. Bernard from increasing her number of client relationships.

67. Through Mr. Michael J. Ling's action, Ms. Bernard was relieved of her previous responsibility of tracking and maintaining adequate client activity logs and participating in all aspects of providing financial planning services for Berkeley Inc. clients.

68. Prior to October 24, 2017, Ms. Bernard had no restrictions on what she was permitted to discuss with her clients and the joint clients of Berkeley, Inc.

69. On or about December 12, 2017, Mr. Michael J. Ling imposed restrictions as to what Ms. Bernard was to discuss with clients thus lessening Ms. Bernard's responsibility and authority to provide direct service to clients of Berkeley Inc.

## IV. STATEMENT OF CLAIM

### COUNT ONE

**(Violation of the Equal Pay Act - 29 U.S.C. § 206(d), the Equal Pay Act of 1963)**

70. Ms. Bernard incorporates and re-alleges paragraphs 1-69 as this paragraph 70 of this Count 1.

71. By paying Ms. Bernard compensation less than a male employee for substantially equal work on a job requiring substantially equal skill, effort responsibility under similar working conditions and where Ms. Bernard had additional duties that shared with the male employee, the Defendants violated the Equal Pay Act ("EPA").

72. As a result of Defendant's paying Ms. Bernard less than it paid the subject male employee Mr. Hendrickson, Ms. Bernard has suffered and will continue to suffer economic losses.

73. As a result of the Defendant's EPA violation, Ms. Bernard is entitled to recover the amount of wages she would have been paid in the absence of the violation, an equal amount as liquidated damages, and prejudgment interest on those amounts; *see* 29 U.S.C.§ 216(b).[3]

74. As a result of the Defendant's EPA violation, Ms. Bernard is entitled to recover her attorney fees and costs incurred in pursing this matter.

## COUNT TWO

### (Violation of the Fair Labor Standards Act - 29 U.S.C. § 207(a)(1))

75. Ms. Bernard incorporates and re-alleges paragraphs 1-74 as this paragraph 75 of this Count 2.

---

[3] 29 U.S.C. § 216(b) reads in part as follows:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages… The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

76. By failing to pay Ms. Bernard compensation for the overtime hours worked, the Defendants violated the Fair Labor Standards Act ("FLSA") Maximum Hours regulation 29 U.S.C. 29 U.S.C. § 207(a)(1).

77. As a result of Defendant's failure to pay Ms. Bernard for the overtime hours in violation of the FLSA that she worked Ms. Bernard has suffered and will continue to suffer economic losses.

78. As a result of the Defendant's failure to pay Ms. Bernard for the overtime hours she worked in violation of the FLSA, Ms. Bernard is entitled to recover the amount of overtime wages she would have been paid in the absence of the violation, an equal amount as liquidated damages, and prejudgment interest on those amounts; *see* 29 U.S.C.§ 216(b).

## COUNT THREE

### (Violation of The Idaho Equal Pay Act - I.C. § 44-1702(1))

79. Ms. Bernard incorporates and re-alleges paragraphs 1-78 as this paragraph 79 of this Count 3.

80. By paying Ms. Bernard compensation less than a male employee for substantially equal work on a job requiring substantially equal skill, effort responsibility under similar working conditions and where Ms. Bernard had additional duties that shared with the male employee, the Defendants violated the Idaho Equal Pay Act ("IEPA").

81. As a result of Defendant's paying Ms. Bernard less than it paid the subject male employee Mr. Hendrickson, Ms. Bernard has suffered and will continue to suffer economic losses.

82. As a result of the Defendant's IEPA violation, Ms. Bernard is entitled to recover the amount of wages she would have been paid in the absence of the violation, an equal amount as

liquidated damages, and prejudgment interest on those amounts; *see* I.C. §§ 44-1704(1) and 44-1704(5).[4]

83. As a result of the Defendant's IEPA violation, Ms. Bernard is entitled to recover her attorney fees and costs incurred in pursing this matter; *see* I.C. § 44-1704(2).[5]

## COUNT FOUR

### (Violation of The Idaho Wage Claim Act - I.C. § 45-615(1))

84. Ms. Bernard incorporates and re-alleges paragraphs 1-83 as this paragraph 84 of this Count 4.

85. On October 23, 2017 Ms. Bernard made a written demand to the Defendants for all wages owed to her; and upon information and believe the Defendant's received the written demand on October 24, 2017.

86. As of the filing of this complaint Ms. Bernard has not been paid the wages requested and due to her.

---

[4] I.C. § 44-1704(1) reads as follows:  Any employer who violates the provisions of section 44-1702, Idaho Code, shall be liable to the employee or employees affected in the amount of their unpaid wages, and in instances of willful violation in employee suits under subsection (2) of this section, up to an additional equal amount as liquidated damages.

I.C. § 44-1704(5) reads as follows: In proceedings under this section, the court may order other affirmative action as appropriate, including reinstatement of employees discharged in violation of this act.

[5] I.C. § 44-1704(2) reads as follows: Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. The court in such action shall, in cases of violation in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

87. At the time of the filing of this complaint, Ms. Bernard demanded that she be compensated in the amount of one hundred sixty-six thousand, eight hundred ninety-four dollars and sixty-one cents ($166,894.61).

88. Pursuant to I.C. § 45-615(2), Ms. Bernard is *presently* entitled to damages in an amount equal to three (3) times the amount of wages calculated as five hundred thousand, six hundred eighty-three dollars and eighty-three cents ($500,683.83). This figure will change depending on the date the jury delivers its verdict and the verdict is in favor of Ms. Bernard's complaint.

## COUNT FIVE

### (Retaliation in Violation of the Fair Labor Standards Act 29 U.S.C. § 215(a)(3) [6])

89. Ms. Bernard incorporates and re-alleges paragraphs 1-88 as this paragraph 89 of this Count 5.

90. To establish a prima facie case of retaliation, the Ninth Circuit Court of Appeals has held that a Plaintiff must establish that Plaintiff was (1) engaged in a protected activity, (2) suffered an adverse employment action, and (3) establish that there was a causal link between the protected activity and adverse employment action. *E.E.O.C. v. Luce, Forward, Hamilton & Scripps,* 303 F.3d 994, 1004 -1005 (C.A.9 (Cal.), 2002), *Patterson v. State, Dept. of Health & Welfare,* 151 Idaho 310, 318, 256 P.3d 718, 726 (Idaho, 2011).

---

[6] The Equal Pay Act, 29 U.S.C. §206(d) is a part of the Fair Labor Standards Act. Section 215(a)(3) reads in part that it shall be unlawful to:

> "...to discharge or in any other manner discriminate against any employee because such employee has *filed any complaint* or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee;" (Emphasis added).

91.     From the facts contained/stated in this complaint,[7] it has been established herein, that but for Ms. Bernard's engaging and participating in the protected activity of seeking to be compensated as allowed by 29 U.S.C. § 206(d)(1), and objecting to her being compensated in alleged violation of 29 U.S.C.§ 206(d)(1), to the Defendant's Mr. Michael J. Ling and Mr. Paul Stephen White, Ms. Bernard would not have suffered the adverse employment actions in her employment with Respondent.[8]

92.     The very close proximity in time of the protected act, vis-à-vis Ms. Bernard being subjected to the delineated adverse acts, establish the requisite, and in this instance the undeniable strong causal link.

## V. DEMAND FOR JURY TRIAL

93.     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

## PRAYER FOR RELIEF

---

[7] *See ¶¶ 32-69 herein.*

[8] Instruction 10.9 of the Model Jury Instructions for the District Courts of the Ninth Circuit reads in part as follows:

> …an adverse action in the context of a retaliation claim need not materially affect the terms and conditions of employment ***so long as a reasonable employee would have found the action materially adverse***, which means ***it might have "dissuaded a reasonable worker from making or supporting a charge of discrimination***." See *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *see also Thompson v. N. Am. Stainless, LP*, 562 U.S. 170 (2011) (applying *Burlington* standard). (Emphasis added.)

WHEREFORE, Ms. Bernard prays that this Honorable Court enter judgment in her favor against Defendants and grants the following relief:

a. Back pay and benefits, in the amounts to be determined at trial;

b. Liquidated damages in the same amount as the backpay award;

c. Damages in the amount of three (3) times the wages due and owing to Ms. Bernard;

d. Pre-judgment and post-judgment interest at the highest rate allowed under rule and law;

e. Attorneys' fees and cost;

f. An order instructing Defendants to compensate Ms. Bernard in all respects the same compensation paid to her male comparator; and

g. For such other and further relief as may be just and proper.

PLAINTIFF
By Plaintiff's Attorney
Idaho Employment Law Solutions, PLLC

_____
RONALDO A. COULTER